UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA HORAN,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     3:07cv1582 (WWE) |
| | : |
| SEARS ROEBUCK & CO. and<br>SEARS HOLDING CORPORATION,<br>    Defendant. | :<br>:<br>: |

## MEMORANDUM OF DECISION ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Patricia Horan alleges that defendants Sears Roebuck & Co. ("Sears") and Sears Holding Corporation ("SHC") violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1) et seq..[1]

Defendants have filed a motion for summary judgment. For the following reasons, the motion for summary judgment will be granted as to SHC and denied as to Sears.

## BACKGROUND

The parties have submitted briefs and statements of fact with supporting exhibits and affidavits. These materials reveal that the following facts are not in dispute.

Defendant Sears is wholly-owned by defendant SHC.

Plaintiff was born in 1955. She commenced her career at Sears in October 1972

---

[1]Connecticut courts look to federal employment discrimination precedent in analyzing claims brought pursuant to the Connecticut Fair Employment Practices Act. See Levy v. Comm'n on Human Rights and Opportunities, 236 Conn. 96, 103 (1996).

1

as a part-time sales person.  In February 1976, plaintiff began working as a full-time salesperson in "Soft Lines," which is the term that Sears uses to describe the clothing, bedding and other "soft" products it sells.   During the next nineteen years, plaintiff worked in stores throughout Connecticut in a sales and/or operations management role.

In 1997, she was promoted to Assistant Store Manager ("ASM") of the Operations Department at the Waterford, Connecticut store.  The ASM heads a store department and reports to the Store Manager ("SM").  The SM reports to the District Manager ("DM"), who reports to a Regional Vice President ("RVP").

In January 2002, Sears went through a reorganization.  At that time, plaintiff received a raise and moved to an ASM position at the West Hartford Home Improvement Department, which was considered a "Hard Lines" department.  After a few months, plaintiff transferred back to a "Soft Lines" department in that same store.

In January 2005, plaintiff applied for the ASM position in Brand Central at the Milford, Connecticut store.[2]  She was hired by the Milford store's then SM.

In spring 2005, Susan Kay became the SM of the Milford Store.  Kay commenced her work at the Milford store by assessing the performance of its departments.  She found that the Operations, Jewelry, In-Store Marketing, and Brand Central Departments represented problem areas for the store.

Michael Favale, whom Kay believed to be in his mid-30s, was the Operations ASM.  Kay believed that Operations had poor stockroom maintenance and poor management.  In early June 2005, Kay placed Favale on a "Performance Plan for

---

[2]The Brand Central is a "Hard Lines" department that sells vacuums, washers, dryers, ovens, televisions and other appliances.

Improvement" ("PPI"), which identifies an employee's performance deficiencies and sets forth a plan and timeline for improvement. The PPI should last for a minimum of fifteen days.

In July 2005, Kay issued Favale a second PPI. In September 2005, Favale resigned.

Gloria Murphy was the ASM in the Jewelry Department. At the time, Murphy was in her late-50s. Kay found that the Jewelry Department failed to meet required company percentages for sales of jewelry protection plans. After meeting with Murphy, Kay believed that Murphy was ill-suited for the role of ASM in that department. Murphy accepted a transfer to the Shoe Department.

Gina Dwyer was the ASM for the In-Store Marketing Department. At the time, she was in her late-20s. Kay found that In-Store Marketing had poor visual merchandising and poor promotional signage. After Kay had conversations with Dwyer about the problems with her department, Dwyer resigned voluntarily.

As for Brand Central, Kay focused her attention on poor staffing or employee coverage, lack of presentation or signage quality, poor replenishment of product, and lack of employee training and respect for plaintiff. Kay also found that the department failed to meet Sears' critical labor requirement ("LRQs"), product return goals, and company requirements for sales of protection agreements in both the electronics and appliance areas.

Kay addressed these issues with plaintiff and discussed how plaintiff might improve her performance and that of the department. She suggested that plaintiff should speak to another Brand Central ASM for advice on how to improve the

3

department.

On July 10, Kay drafted a first-step PPI for plaintiff.  After plaintiff returned from her vacation on July 28, Kay issued the first PPI.  It provided that plaintiff needed to hire new employees; improve signage and floor set-up; and complete monthly observations and reviews of each associate.  Kay wrote further:

> Based on results mentioned above, Pat is not reviewing the Discovery guide process with each associate and working the observations as well as the ACR.  When Pat begins to consistently work with these tools, the result on all associates will improve. Training and expectations from Pat for each new associate on the floor is necessary to avoid turnover and poor customer service.  Customer complaints due to delivery and service issues.  Pat needs to be more empathetic with the customers when there is a problem.  Pat needs to work with delivery and service to resolve the issues to the best of her ability to avoid dissatisfied customers.  Pat also needs to empower her associates to handle these complaints.

She set forth that plaintiff should correct the identified deficiencies according to the following deadlines:

> 1. Staffing by 8/7; 2. Display checksheets updated by 8/7; 3. Floor sample checksheets on process by 8/7; 4. Big ticket verification sheets worked weekly by 8/7; 5. Signing standards in 3/57 by 7/30; 6. MSP worked weekly by 7/30; 7. ACR usage daily by 7/30; 8. 2 Observations per associate by 7/30 and on-going; 9. Review discovery guide books by 8/7; 10. Train and set expectations with each new associate as they are hired.

On September 6, Kay met with plaintiff to discuss the fact that she had not satisfied the expectations of the PPI, although she had made some improvements in returns and allowances.  Kay issued a second PPI and requested that plaintiff submit an Action Plan "with specifics on how she will create consistancy on all aspects/processes of her job by Monday, Sept. 12th."  On the PPI, Kay warned plaintiff that "[c]ontinued failure to show consistant improvement in your performance will lead to

4

further disciplinary action, up to & including termination." The date of the next follow-up meeting with Kay was set for October 6, 2005.

Plaintiff submitted the Action Plan to Kay as requested.

The October meeting between Kay and plaintiff never occurred. Plaintiff recollects that Kay told her that they were not meeting and that improvement had been seen.

In early November, Greg Wold, who had recently become the DM in September, made an unannounced visit to the Milford store to walk each department and discuss matters with the SM and ASMs. Wold recalls that he had concerns about staffing, presentation, merchandise, adherence to company policy and signage in Brand Central. However, Wold does not remember having any discussion with plaintiff.

Wold met with Kay as "part of his job to help everybody from a management standpoint." In her deposition, Kay stated that Wold informed her that he had found plaintiff's leadership to be ineffective and that she was not capable of running Brand Central. Wold testified that he had not concluded that plaintiff needed to be terminated at that meeting.

On November 5, plaintiff met with Kay to discuss her PPI. On the PPI follow-up, Kay wrote:

> Pat's leadership is ineffective. She has not consistently worked quickly to understand what the customer needs, has not identified opportunities for business results and processes and is not consistantly finding ways to improve profitability and productivity...

She faulted plaintiff for failing (1) to recruit associates from outside the store; (2) signage that was not consistently at company standard; and (3) inadequate review and

5

coaching of associates. She concluded that plaintiff's "[c]ontinued failure to improve performance would lead to termination." She also informed plaintiff verbally that she could take time off to look for another position.

On November 23, 2005, Kay gave plaintiff her final PPI. Prior to issuing this PPI, Kay requested that Wold and Sears Human Resources Consultant Roberta Proper review and approve the content. In the PPI, Kay indicated that plaintiff's performance had not improved and she detailed the same issues as the prior PPI.

With approval of Wold and Proper, Kay terminated plaintiff's employment effective December 7, 2005.

Plaintiff's position was later posted with the designation "Candidate identified." Sarah Jayne, who was then in her early-twenties and had never worked as an ASM, was selected as plaintiff's replacement.

In January 2006, plaintiff filed her administrative complaint with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CHRO"), alleging that Sears violated the ADEA and the CFEPA. In her statement of facts to the CHRO, she stated: "Sears' corporate office is located 3333 Beverly Road, Hoffman Estates, IL 60719," which is SHC's address.

Jim Fischer, SHC's Fair Employment Consultant, wrote to the CHRO that the administrative charge had been forwarded to him "for review and handling."

Plaintiff filed this complaint within 90 days of receiving her Notice of Right to Sue and Release of Jurisdiction from the administrative agencies.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue

as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F.2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

Claims Against SHC

Defendants argue that plaintiff cannot maintain her claims against SHC because she has not exhausted her administrative remedies as to that defendant, and because she cannot prove that SHC was her "employer" within the meaning of the statute. Plaintiff counters that SHC is a joint employer and that her claims against SHC were properly exhausted.

Generally, prior to filing a civil action, a plaintiff must exhaust an age discrimination claim pursuant to the ADEA and CFEPA with the relevant local agency.

7

Miller v. Int'l Telegraph Corp., 755 F.2d 20, 23-24 (2d Cir. 1985); Sullivan v. Bd. of Police Commissioners, 196 Conn. 208, 216 (1985).  The exhaustion requirement exists to afford the administrative agency the opportunity to investigate, mediate, and take remedial action.  Stewart v. United States Immigration and Naturalization Serv., 762 F. 2d 193, 198 (2d Cir. 1985); see also Miller, 755 F.2d at 26 (statutory notice provision is meant "to encourage settlement of discrimination disputes through conciliation and voluntary compliance.").

Defendants maintain that the claims against SHC were unexhausted because plaintiff did not name SHC as a respondent in her administrative complaint and she made no allegations of age discrimination against SHC in her statement of facts. However, even if plaintiff had named SHC as a respondent or had alleged discriminatory acts by SHC in her administrative charge, she could not maintain her case against SHC because it cannot be considered plaintiff's employer.

Defendants have submitted evidence that plaintiff was not a direct employee of SHC.  However, under certain circumstances, entities may be so intertwined that they are a "joint employer" for purposes of Title VII.  Kern v. City of Rochester, 93 F.3d 38, 45 (2d Cir. 1996).  The joint employer doctrine has been applied in the context of ADEA claims.  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 89 (2d Cir. 2005).  An entity "must exercise a direct and significant degree of control over the complaining party's direct employer or the complaining party's work environment" to constitute a joint employer. Goyette v. DCA Advertising Inc., 830 F. Supp. 737, 744 (S.D.N.Y. 1993).  Courts have considered whether the asserted joint employer had the power to: (1) hire or fire the plaintiff, (2) supervise plaintiff's work, (3) control plaintiff's conditions of employment, (4)

8

determine plaintiff's compensation, or (5) to maintain records of plaintiff's employment. See Kern, 93 F.3d at 45.

Plaintiff points out that the SHC provides guidelines relevant to its subsidiaries' Human Resources issues, and that SHC maintains an intranet website for its subsidiaries' Human Resources Departments. However, there is no evidence that SHC was involved in the supervision of plaintiff, the decision to fire her, the determination of her compensation, or maintenance of her employment records. Accordingly, plaintiff's evidence does not raise an inference that SHC exercised "a direct and significant degree of control over" Sears or plaintiff's work environment. Summary judgment will be granted in defendant SHC's favor.

Disparate Treatment

Defendants assert that plaintiff cannot establish a prima facie case of disparate treatment under the ADEA and cannot prove that its legitimate business reason for her termination is pretextual.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). To prevail on an ADEA disparate treatment claim, a plaintiff must prove "that age was the 'but-for' cause of the challenged adverse employment action." Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343, 2352 (2009).

In Gross, the Supreme Court noted that it "has not definitively decided" whether the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

9

(1973) is appropriate in the ADEA context. 129 S.Ct. at 2349 n. 2.  Since the Supreme Court declined to resolve this issue, this Court will adhere to Second Circuit precedent applying the McDonnell Douglas framework to ADEA disparate treatment claims.  See D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 194-95 (2d Cir. 2007).

Thus, the Court will first consider whether plaintiff has set forth a prima facie case.  It is well settled that to establish a prima facie claim of discrimination, the plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.   Although the plaintiff's initial burden is not onerous, she must show that her termination was not made for legitimate reasons.  Thomas v. St. Francis Hosp. and Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998). The burden of establishing this prima facie case in employment discrimination cases is minimal.  McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action.  Once defendant has articulated such a reason, the question in reviewing a motion for summary judgment is whether the evidence is sufficient to sustain a reasonable finding that the legitimate, non-discriminatory reasons proffered by defendant were false or pretextual for discrimination. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).

Here, plaintiff has satisfied her initial minimal burden of establishing a prima facie case.  It is undisputed that plaintiff is a member of the protected class.  Plaintiff was

qualified to perform her position as a long tenured employee at Sears who had worked a variety of positions within the store.  In light of the selection of a significantly younger candidate to replace plaintiff, plaintiff's termination occurred under circumstances giving rise to age discrimination.  See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996); see also Framularo v. Bd. of Educ., 549 F. Supp. 2d 181, 186 (D. Conn. 2008).

Defendants maintain that plaintiff's termination stemmed from her poor performance after six months of performance counseling.  However, construing the record as whole in favor of plaintiff, issues of fact exist relevant to Kay's management of plaintiff's PPIs and the selection of Jayne to replace plaintiff.  A jury could construe the evidence to find that plaintiff could never satisfy Kay's expectations because Kay wanted a younger ASM.

Defendants argue that plaintiff cannot show that her age was the but-for cause of her termination.  On summary judgment, plaintiff must only raise an inference that age discrimination was the reason for her discharge.  At this stage, plaintiff has raised such an inference, although she will ultimately need to persuade a jury that her age was the but-for cause of her termination.  The Court will deny summary judgment as to the disparate treatment claims against defendant Sears.

## **CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment [#33] is GRANTED as to SHC and DENIED as to Sears.

Plaintiff is instructed to amend the complaint to remove SHC as a defendant within ten days of this ruling's filing date.


                                                      _____/s/_____
                                                    Warren W. Eginton
                                                    Senior U.S. District Judge

Dated this _28___th day of September, 2009 at Bridgeport, Connecticut.